

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| **TONONA R. HAYNES,** ) | **Docket No. 2015-07-0427** |
| Employee, ) | |
| v. ) | |
| **NATCHEZ TRACE YOUTH ACADEMY,** ) | **State File No. 95374-2014** |
| Employer, ) | |
| And ) | |
| **NEW HAMPSHIRE INS. CO.,** ) | **Judge Allen Phillips** |
| Carrier. ) | |

---

## COMPENSATION HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on January 18, 2017, for a Compensation Hearing. The central legal issue is the compensability of Ms. Haynes' claim, specifically, whether the requisite causal link exists between her employment and her alleged bilateral shoulder injuries. After consideration of the differing expert opinions on the issue, the Court holds the preponderance of the evidence does not support a causal link between Ms. Haynes' injuries and her employment. Thus, the Court denies Ms. Haynes' claim for benefits.

### History of Claim

Ms. Haynes works at Natchez Trace Youth Academy as the business office coordinator. On December 4, 2015, she struck both shoulders and her back when she fell when caught in a physical confrontation between a fellow employee and a student. Ms. Haynes completed an accident report and listed the right shoulder as the only "part of body affected." (Ex. 5 ex. 4.) A representative of Natchez Trace then transported her to Three Rivers Hospital, where records indicate Ms. Haynes reported "rt. Shoulder & hand pain" that stemmed from the altercation. (Ex. 5 ex. 3 at 1 and 4.) X-rays revealed "evidence of old ac injury but no new changes," and the provider diagnosed a right shoulder strain. *Id.* at 3.

1

The next day, Ms. Haynes began treatment with Dr. Jason Hollingsworth, an approved physician. He noted a history of "low back and right shoulder pain." (Ex. 5 ex. 5 at 1.) Ms. Haynes recalled telling Dr. Hollingsworth that both shoulders hurt, but Dr. Hollingsworth did not record any left shoulder complaints in any of his records spanning December 5 through December 19. *See generally Id.* at 1-14. At his last visit, when he made an orthopedic referral, he recorded only right shoulder pain.

Ms. Haynes chose Dr. Blake Chandler from a panel of orthopedists. On December 31, she reported pain in her right shoulder stemming from the altercation. (Ex. 5 at 24.) She denied prior problems with her right shoulder, but x-rays revealed degenerative changes and a prior dislocation. *Id.* at 26. Dr. Chandler diagnosed a right shoulder strain. *Id.* at 27. According to Dr. Chandler, they "didn't even discuss" the left shoulder. *Id.* at 28. Ms. Haynes claims to have reported both shoulders hurt and that she filled out an intake form that listed both. (Ex. 5 at ex. 8 and ex. 9.)

Regarding the right shoulder, Dr. Chandler recommended an MRI. He personally reviewed the MRI and noted rotator cuff tendinitis and degenerative changes. He saw no rotator cuff tear. *Id.* at 30.

Dr. Chandler next recorded right shoulder complaints on November 11, 2015. *Id.* at 45. Despite anti-inflammatory medications prescribed primarily for the left shoulder, Ms. Haynes had seen no improvement in her right shoulder complaints. Dr. Chandler maintained his initial diagnoses of right rotator cuff tendinitis and degenerative joint disease and recommended right shoulder surgery.

As to the left shoulder, Dr. Chandler recorded Ms. Haynes first complained of pain on February 11. *Id.* at 35. Because Ms. Haynes did not complain about her left shoulder at Three Rivers Hospital, did not complain to Dr. Hollingsworth, and made no complaints to Dr. Chandler until over two months into his treatment, Dr. Chandler concluded any left shoulder complaints were not primarily related to the December 4, 2014 incident. *Id.* at 34. Instead, "her left shoulder is more degenerative in nature than a traumatic event, particularly in light of the fact that although she may have put in plural shoulders on her intake form, she never really complained to the point of that shoulder until later in the treatment." *Id.* at 98. However, after an MRI revealed a torn rotator cuff and degenerative changes, Dr. Chandler performed surgery on June 1, 2015.

On December 4, Dr. Chandler performed surgery on Ms. Haynes' right shoulder and discovered a full thickness rotator cuff tear. In his deposition, he summarized his causation opinion regarding the right shoulder as follows:

Based upon the initial evaluation that I saw on her following the injury on 12/4/14, I believe for her right shoulder, which is what she complained of and I examined on my initial visit on 12/31/14, I believe that the

2

mechanism of injury and the x-ray findings and the subsequent exam history and MRI findings and subsequently the surgical findings, what I saw leads me to believe that she had more problems from the degenerative changes than she did from the traumatic work injury. So I cannot say, with more than 50 percent certainty, that all of her shoulder problem was related to her work injury.

*Id.* at 96.

Dr. Chandler did not believe Ms. Haynes had a right rotator cuff tear when he initially saw her based on his examination findings and the MRI. He "definitely" saw the tear in surgery but, "how or when that happened, I can't, with medical certainty, say." *Id.* at 97. Dr. Chandler believed the tear developed after the date of the MRI. *Id.* at 47. He believed the incident of December 4 occurred, but he attributed only "between 1 and 49 percent" of Ms. Haynes' right shoulder problems to it. *Id.* at 95.

Natchez Trace's carrier controverted the claim after receiving Dr. Chandler's opinion of no causal connections between Ms. Haynes' bilateral shoulder injuries and the incident and after obtaining medical records indicating that Ms. Haynes had treated at a hospital for a left shoulder injury in 2004. It ceased paying medical benefits, and Ms. Haynes used personal insurance to continue her care with Dr. Chandler.

Ms. Haynes was evaluated on one occasion by Dr. Samuel Chung at the request of her attorney. Dr. Chung testified the December 4 incident contributed more than fifty percent to both the right and left shoulder injuries.

Regarding the left shoulder, Dr. Chung stated any prior complaints, namely some presented to him in a 2004 Camden Hospital note, did not cause her a functional deficit. (Ex. 3 at ex. C.) Instead, the December 4 incident "brought on the rotator cuff tear and the aggravation of the arthritic condition that caused . . . not only further pain but functional deficit that required surgery." Natchez Trace pointed out that, at the time of his evaluation, Dr. Chung did not consider whether Ms. Haynes had any other injuries to her left shoulder or review any records of such, but he noted he has only "about one hour to do [such] evaluations." (Ex. 3 at 92.)

As to the right shoulder, Dr. Chung surmised Dr. Chandler "did the surgery because there was high index of suspicion of something wrong with the rotator cuff" and not because of any prior dislocation. Further, he believed Dr. Chandler would not have performed "the arthroscopic surgery unless he has a clear injury that he is there to correct." *Id.* at 100.

On cross-examination, he admitted "there's always a possibility" of another mechanism of injury but, when looking to the "probable situation," there was a "cause

3

and effect." *Id.* at 78. Namely, because Ms. Haynes suffered an incident, had trauma from that incident, and then underwent surgery, Dr. Chung believed the net effect of the incident caused the need for medical treatment. *Id.* at 79. Though further admitting a lack of a complete history from Ms. Haynes, Dr. Chung again pointed to the finding of a "clear full rotator cuff tear . . . so obviously, that tear came from the [December 4 incident]." *Id.* at 69. Dr. Chung held the same opinion as to the cause of the left shoulder.

Dr. James Warmbrod, an orthopedic surgeon, performed a one-time evaluation of Ms. Haynes on behalf the carrier. On August 11, 2016, in a questionnaire from the carrier's representative, Dr. Warmbrod answered the only question pertinent to causation by saying he "believ[ed] the medical services, treatment, and diagnostic tests were medically necessary and related to the injury." (Ex. 4 ex. 2 at 3.) This inquiry did not distinguish between the right and left shoulders.

When specifically considering the right shoulder, Dr. Warmbrod replied to questions from defense counsel on October 1, 2016. In his reply, after review of the 2004 Camden Hospital records, he changed his opinion regarding the right shoulder to the effect that degenerative changes and tendinitis in the right rotator cuff might have progressed over time and led to the need for surgery. *Id.* ex. 6 at 2. Hence, Dr. Warmbrod felt he could no longer attribute fifty percent or more of the cause of Ms. Haynes' right shoulder condition to the work incident. However, the 2004 Camden Hospital notes mentioned only the *left* shoulder and not the right, a fact Dr. Warmbrod conceded in his deposition. *Id.* at 10. The parties did not question Dr. Warmbrod any further on this specific point.

However, Ms. Haynes elicited testimony from Dr. Warmbrod that he later responded to her counsel that the incident contributed more than fifty percent to the need for medical treatment. *Id.* at ex. 4. When cross-examined by defense counsel about this second reversal and why he again attributed fifty percent or more of the cause of the right shoulder injury to the incident, Dr. Warmbrod testified:

A   I think irregardless of what I've said in the past, that's a tough question, but I have no reason to doubt that – today that I can say within medical certainty, that – it's a guess, but she didn't have a lot of trouble before, and I think I can say it's 50 percent more related to the injury she had.

Q   Did you say it's a guess?

A   Well, it's based on my forty years of experience in orthopedics, I guess, you know. It's a guess.

Q   But can you state it within a reasonable degree of medical certainty?

A   I would think that it's within 50 percent; yes, sir.

Q   I guess I would ask, then, why your opinion changed from the time that you were asked by the employer and said no. What changed to

4

make your opinion go to yes to that question?

A   I don't have a good answer to that. After thinking about it, reviewing more records, I guess, you know.

*Id.* at 46-47.

On the left shoulder, Dr. Warmbrod conceded he mistakenly stated Ms. Haynes complained of pain to Three Rivers Hospital on the date of the injury and relied upon that incorrect history in rendering his causation opinion. *Id.* at 48. When reminded of the fact she did not complain of left shoulder pain until two months later, he stated "I still think there's some causal relationship there. You know, it's a guess. I agree." *Id.* at 49.

For her part, Ms. Haynes testified she had no problems with either shoulder before December 4. Further, she directly told Dr. Chandler at her first visit with him that both shoulders hurt. Conversely, she could not recall any injury or physical limitation because of either shoulder before the incident, neither did she remember going to Camden Hospital in 2004 for her left shoulder. On cross-examination, when questioned regarding prior accidents and workers' compensation claims, she did not deny the occurrence of the events but stated repeatedly that she did not remember what had happened. For example, she did not remember a prior dislocation of her right shoulder as was shown on x-rays at Three Rivers. She noted, "I'm fifty-four years old and we go through a lot of things." However, if there were documentation in medical records, she would not deny any prior injuries.

When reminded on cross-examination of an incident when she fell at work between the December 4 incident and her right shoulder surgery, she again expressed no specific memory of the incident. But, she conceded a fall on outstretched arms, as described in the questioning, might affect her shoulders. She also denied any other injury, at work or otherwise, between December 4 and her right shoulder surgery one year later.

Ms. Haynes requested payment of medical bills incurred in the treatment of both shoulders and temporary total disability for the time she missed from work due to each surgery. She requested permanent partial disability benefits based upon Dr. Chung's rating.

For its part, Natchez Trace argued Ms. Haynes failed to establish a compensable injury based upon the medical proof. It argued the Court should deny her claim in its entirety.

5

**Findings of Fact and Conclusions of Law**

*Standard applied*

At this compensation hearing, Ms. Haynes must establish by a preponderance of the evidence that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2016).

*Applicable authority*

For her injury to be compensable under the Workers' Compensation Law, Ms. Haynes must establish that it was caused by a specific incident arising primarily out of and in the course and scope of her employment and identifiable by time and place of occurrence. She must also produce medical testimony, within a reasonable degree of medical certainty, that her employment contributed more than fifty percent in causing her injury. To establish a reasonable degree of medical certainty, a physician must provide an opinion that the injury is more likely than not related to the employment when considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(A)-(D) (2016).

*Ms. Haynes established a specific incident*

The Court finds Ms. Haynes established the first required element of a compensable injury by a preponderance of the evidence: namely, a specific incident identifiable by time and place of occurrence. Despite challenges by Natchez Trace regarding the actual dynamics of the incident, she explained being struck in a confrontation and striking her body against nearby objects and/or the floor. The co-employee involved in the confrontation corroborated her description.

*Ms. Haynes did not establish, to a reasonable degree of medical certainty, an injury arising primarily out of her employment*

The Court finds the medical evidence fails to show by a reasonable degree of medical certainty that the employment contributed fifty percent or greater to Ms. Haynes' injuries. This finding is applicable to both the right and left shoulders.

*a) She produced insufficient lay evidence supporting causation*

In making this finding, the Court begins with Ms. Haynes' own testimony. As directed by the Appeals Board, medical proof "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Nance v. Randstad*, 2015 TN Wrk. Comp. App. Bd. LEXIS 15, at *8 (May 27, 2015). In stark contrast to her testimony regarding a specific incident, the

6

Court finds Ms. Haynes' remaining testimony much less convincing.

On multiple occasions, Ms. Haynes could not recall certain events, including when confronted on cross-examination regarding a fall she sustained in the period between the December 4 incident and her right shoulder surgery. As Natchez Trace aptly points out, a fall on outstretched arms may very well have bearing on the issue of when anatomic damage was done to her shoulder. She agreed a fall could "probably" affect her shoulders. Ms. Haynes did not deny the occurrence of this purported event.

Further, Ms. Haynes did not deny the occurrence of prior injury claims. Instead, she demonstrated a lack of memory regarding those events. Additionally, the Court finds the evidence preponderates against any of Ms. Haynes' assertions she reported left shoulder issues sooner than two months after the incident. Collectively, these deficient recollections add to the Court's finding that the expert medical opinions lack a reasonable degree of medical certainty.

*b) The medical testimony of the treating physician does not support causation*

When evaluating differing medical opinions, this Court must choose which expert to accredit. *Brees v. Escape Day Spa & Salon*, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015). In doing so, it may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.*

The Court first applies the *Brees* criteria to the opinion of Dr. Chandler, the treating physician. The Court finds Dr. Chandler extremely qualified to treat shoulder injuries, having treated, by his estimate, "over 250" in the year prior to his deposition. He performs seventy-five to one hundred rotator cuff repairs yearly. (Ex. 5 at 9.) Further, Dr. Chandler was Ms. Haynes' treating physician. He saw her on multiple occasions and performed multiple surgeries. This is very different from the other two experts who saw Ms. Haynes on only one occasion for evaluation. "It seems reasonable that the physicians having greater contact with [an employee] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991).

Next, when the Court considers the information available to Dr. Chandler, it finds he was in a superior position to obtain an accurate history from Ms. Haynes during his extended course of treatment. This in turn places him in the best position to determine the relationship between her history of the incident and the cause of her injury. Dr. Chandler knew of the incident from the outset, he met with and examined Ms. Haynes, he personally reviewed her MRI, and he directly visualized her shoulders during surgery. Neither of the other experts can match this position. Given his knowledge gleaned by a

7

complete history, and its application to his extended treatment, he maintained his opinion that the incident contributed less than fifty percent to Ms. Haynes' injuries.

The Court notes specifically that Ms. Haynes made no verbal complaints of her left shoulder to Dr. Chandler for over two months. Even with Ms. Haynes using language indicating both shoulders on an intake form, the Court does not believe Dr. Chandler failed to record any direct mention of left shoulder complaints at multiple office visits. The Court finds the evidence preponderates in favor of a finding that Ms. Haynes did not complain of her left shoulder until two months after the incident, thus bolstering Dr. Chandler's causation opinion.

### Ms. Haynes' evidence did not rebut the treating physician's opinion

Because Ms. Haynes chose him from a panel, Dr. Chandler's causation opinion is entitled to a presumption of correctness, rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2016). To determine whether Ms. Haynes rebutted that presumption, the Court will apply to the other opinions the same *Brees* criteria it applied to Dr. Chandler's opinions.

Turning first to Dr. Warmbrod, the Court notes he has practiced orthopedic surgery for over forty years and is qualified to evaluate Ms. Haynes, but he only saw her on one occasion at the request of the carrier. However, the factor of what information was available to Dr. Warmbrod, and how he viewed it, is controlling.

Specifically, Dr. Warmbrod conceded an incomplete history of when Ms. Haynes first complained of her left shoulder. Likewise, he did not consider a seven month gap between the initial treatment for the right shoulder and surgery. These factors color his ultimate causation opinions. Namely, when confronted with the timeline of right shoulder treatment, he testified only that was "possible" that Ms. Haynes tore her rotator cuff in the incident. Moreover, he ascribed only some causal relationship and he "thought" it was fifty percent or more, but "it's a guess."

As to the left shoulder, Dr. Warmbrod again went no further than attaching "some causal relationship," and that "it's a guess." These opinions on both the right and left shoulders are in the realm of speculation and possibility, and insufficient to rebut Dr. Chandler. *See* Tenn. Code Ann. § 50-6-102(14)(D) (2016).

Regarding Dr. Chung, he too saw Ms. Haynes on only occasion, and he did so at the request of her attorney. Certified as an independent medical examiner and possessing physical medicine training, the Court finds Dr. Chung is qualified to evaluate Ms. Haynes. However, as with Dr. Warmbrod, the Court again finds weaknesses in Dr. Chung's causation opinions when applying the other *Brees* factors.

Notably, Dr. Chung conceded he did not have all prior medical records at the time of evaluation. Accordingly, he did not know of prior problems that may have contributed to the anatomic conditions. But, more importantly, he conceded his causation opinion was based upon what he called a "cause and effect" analysis. Because Ms. Haynes suffered a traumatic injury, saw a surgeon, and underwent an operative repair, he surmised a "probable situation" rather than a mere "possibility." In essence, because Dr. Chandler did surgery, Dr. Chung concludes that Dr. Chandler must have suspected a right rotator cuff tear. This is directly contrary to Dr. Chandler's opinion that a causal relationship was lacking and cannot rebut Dr. Chandler's opinion by the required preponderance of the evidence standard. *See Richards v. Kiewit Power Constructors Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 94, at *9 (Dec. 9, 2016) (temporal relationship between a trauma and development of symptoms does not outweigh causation opinion that injury was result of other incidents); *Boyd v. Revel Logging, LLC,* 2015 TN Wrk. Comp. App. Bd. LEXIS 31, at *9 (Sep. 22, 2015) (temporal relationship alone does not provide sufficient causal relationship when a doctor only suspects an injury is related).

Regarding the left shoulder, Dr. Chung admitted that a person with a rotator cuff tear would likely complain of pain at or near the time of injury. His explanation that Ms. Haynes' left rotator cuff tear followed the incident, and therefore must be related to it, does not rebut the fact that Ms. Haynes first reported left shoulder issues two months later.

Given these findings, the Court need not address any specific claim for benefits.

### Alternative Findings

Should an appellate court disagree with this holding, the Court makes the following alternative findings for the sake of judicial economy. *See Cunningham v. Shelton Sec. Serv.,* 46 S.W.3d 131, 137-138 (Tenn. 2001). ("The trial court should . . . hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.")

Ms. Haynes requested payment of medical bills incurred for treatment of both shoulders. Natchez Trace objected to the proffered evidence on grounds there was no proof that the bills were reasonable and necessary. Tennessee Code Annotated section 50-6-204(a)(3)(H) provides that treatment rendered an employee by a panel physician is presumed medically necessary. Because an employee must accept medical benefits offered by the employer, she concomitantly bears no "burden of establishing the necessity of medical treatment or the reasonableness of medical charges" of the authorized physician. *Russell v. Genesco, Inc.,* 651 S.W.2d 206, 211 (Tenn. 1983) Accordingly, if this Court had found her claim compensable, it would have ordered payment of the medical bills Ms. Haynes incurred for treatment of both shoulders, including reimbursement of mileage expenses she incurred in seeking that treatment.

9

Under Tennessee law, to establish entitlement to temporary total disability, Ms. Haynes must show (1) she was totally disabled to work by a compensable injury; (2) a causal connection between the injury and her inability to work; and, (3) the duration of that period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at \*7 (Dec. 11, 2015). Had the Court found compensability, it would have ordered TTD for the periods she was off work after both surgeries.

Because Ms. Haynes made a meaningful return to work, she is limited to permanent partial disability benefits equal to her impairment rating. Tenn. Code Ann. § 50-6-207(3)(A) (2016). The Court finds that the correct impairment rating is fourteen percent to the body as a whole as assessed by Dr. Chung. Though any rating by a treating physician is presumed correct, the Court finds Dr. Chandler did not assess a rating. Despite Natchez Trace's argument that he assigned a zero percent, the Court finds his testimony was that Ms. Haynes "would have impairment, but I can't relate it to . . . the injury." (Ex. 5 at 57.)

Conversely, Dr. Chung explained his rating methodology under the AMA Guides, Sixth Edition. (Ex. 3 ex. B at 3-4.) He also defended his methodology under vigorous cross-examination. *Id.* at 104-116. The Court finds his explanation superior to that of Dr. Warmbrod in support of his seven percent rating. Dr. Warmbrod cited the AMA Guides in his explanation, but noted he assessed the same impairment for both shoulders based on his rating for the right. (Ex. 4 at 51-2.) The explanation of the why he utilized a certain section of the Guides and how it applied to Ms. Haynes is lacking. Accordingly, the Court finds Dr. Chung's explanation most persuasive.

It follows that, had this Court found her injuries compensable, Ms. Haynes would have been entitled to permanent partial disability benefits equal to $29,598.66 (450 weeks x 14% x stipulated rate of $469.82 per week). She would have been entitled to lifetime future medical expenses pursuant to Tennessee Code Annotated section 50-6-204 (2016). The Court would have awarded discretionary costs subject to agreement of the parties or upon motion.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Ms. Haynes' claim on grounds of compensability.

2. Natchez Trace Youth Academy shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016) directly to the Clerk within five business days of the date of this final order, for which execution may issue as necessary.

3. Natchez Trace Youth Academy shall file a Statistical Data form within ten

business days of entry of this final order.

**ENTERED this the 23rd day of February, 2017.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

## APPENDIX

EVIDENCE
1. Medical bills for treatment of right shoulder
2. Medical bills for treatment of left shoulder
3. Deposition of Dr. Samuel Chung
4. Deposition of Dr. James Warmbrod
5. Deposition of Dr. Blake Chandler

TECHNICAL RECORD
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's List of Witnesses
4. Employee's List of Exhibits
5. Employer's Pre-Compensation Hearing Statement And Disclosures
6. Employee's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of February, 2017.

| Name | Email | Service sent to: |
|------|-------|------------------|
| J. Michael Ivey , Employee's Attorney | X | iveylawoffice@tds.com |
| Christopher R. Brooks, Employer's Attorney | X | crbrooks@mijs.com |

_____
**Penny Shrum, Clerk of Court**
wc.courtclerk@tn.gov

11